KATHRYN BRADLEY JACKSON *v.* RICHARD RIDER JACKSON

[No. 341, September Term, 1971.]

*Decided February 2, 1972.*

The cause was argued before MURPHY, C. J., and MOY-
LAN and POWERS, JJ.

*Edward L. Rich, Jr.,* and *David B. Merrill* for appel-
lant.

*Walter R. Tabler,* with whom was *Richard R. Jackson,
Jr.,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The parties to this action were married on July 23,
1948 in Maryland and eventually set up a permanent resi-
dence at Gibson Island, Maryland, where they purchased
a large home. A second home in Fort Lauderdale, Florida
was also owned by the parties, both properties being held
as tenancies by the entireties. Two children were born
of the marriage, a daughter who had become married
prior to the institution of the proceedings upon which
this appeal is based and a son, then seventeen years old.

The pertinent facts are these: On May 5, 1970 the wife,
appellant herein, Kathryn Bradley Jackson, filed a bill
of complaint for permanent alimony, support and cus-
tody, alleging desertion by the husband Richard Rider
Jackson, appellee herein. The husband immediately cross
filed for a divorce *a vinculo matrimonii,* alleging the
wife's adultery; thereafter, the wife amended her original
bill to allege adultery by the husband.[1] Early in December,
1970, a hearing was held solely on the merits of the
husband's cross bill, an agreement previously having been
reached between the parties that the wife's amended bill

---

1. By a decree dated November 4, 1970, the wife was awarded
$125.00 per week as alimony pendente lite plus $125.00 per week,
accounting from September 15, 1970 and continuing for twenty
weeks thereafter, as reimbursement of expenses paid out of her
personal funds.

of complaint would be dismissed and the husband and wife would enter into a property settlement. After testimony was introduced by the husband with respect to the wife's adultery, the court, under the cross bill of complaint, indicated its intention to grant the husband a divorce *a vinculo*. It then inquired as to whether any agreement had been reached "as to the matter of property"; counsel for the parties indicated that there was such an agreement. The wife's counsel then proceeded to read into the record in open court the settlement reached by the parties, which was, in effect, as follows:

1. The husband would pay to the wife $100.00 per week during their joint lives, plus an additional two years after the death of husband, such payments to cease if the wife remarried.
2. The husband to pay the wife's present debts not to exceed the sum of $1500.00.
3. The furniture and household effects in the parties' Florida home would become the exclusive property of the wife.
4. The husband would pay the wife's counsel fee of $2500.00 and all court costs.
5. The husband would receive the entire proceeds from the prior sale of the parties' Gibson Island property then being held in escrow by the wife's attorney, amounting to approximately $40,000.00.
6. The husband to obtain full title and interest in the parties' Fort Lauderdale property, the wife to execute whatever instruments necessary to convey her interest in the property to the husband.

After the property settlement agreement had been read into the record, and counsel for the wife and the court stated their respective intentions that the decree and contract would be effective immediately, the court directed the husband's counsel to prepare the necessary

"order" and have it approved "as to form" by counsel for the wife. The decree prepared by the husband's counsel was signed by the court on December 24, 1970; in addition to granting the husband a divorce *a vinculo*, providing for child support and custody, and stating that the wife was not entitled to alimony, it specified, referring to "an agreement entered into on the record and in open court," that the wife's $2500.00 counsel fee was to be paid by the husband, that the wife transfer "all of her right, title and interest in and to the real property the parties own as tenants by the entireties, in or near Fort Lauderdale, Florida, and all of the proceeds of the sale of the Gibson Island property (subject to existing tax claims) * * *." The signature of counsel for the wife does not appear on the decree, consenting as to its form; he refused to sign it.

A petition for rehearing was filed by the wife with respect to the property settlement agreement and the court's decree. The wife objected to the absence in the decree of the other provisions agreed upon by the parties, particularly that concerning the $100.00 weekly payment the wife was to receive from the husband. It was also alleged that the wife had not agreed to turn over the entire proceeds from the sale of the Gibson Island property to the husband but only the husband's one-half share. The court found no merit in the wife's petition; it concluded that the record reflected her agreement with respect to the parties' property; that the record was accurate, and that the wife was bound by the agreement as it was made and recorded in open court. The court stated that the $100.00 weekly payment provision was not incorporated in the decree because it was not alimony, but that the husband was obliged to pay it, a conclusion not challenged by either party.

On appeal the wife contends that the court below had no authority to order such distribution of the parties' property for the following reasons: (1) that the court, in the absence of statutory authority, has no jurisdiction

to order a transfer of real property or personalty from one spouse to another; (2) that even if the court intended to incorporate the property settlement agreement into its decree of divorce, the agreement as incorporated was invalid because (a) it did not reflect the parties' actual agreement, (b) it was inequitable and without reasonable consideration, (c) it violated the Statute of Frauds since it was not in writing signed by the party to be charged.

Maryland Code, Article 16, Section 28, provides that an agreement between a husband and wife respecting "property rights or personal rights * * * shall be valid, binding and enforceable to every intent and purpose * * *." That equity courts are empowered to recognize and enforce separation and property settlement agreements is clear. *Reichart v. Brent,* 247 Md. 66; *Pumphrey v. Pumphrey,* 11 Md. App. 287. Maryland Rule S77 b provides that such agreements may be made a part of the record in an action for divorce and incorporated, insofar as the court may deem proper, into the decree.

It is entirely clear from the record that the court's decree directing the wife to transfer her interest in the Florida property to the husband, as well as all proceeds of the Gibson Island property, was based upon an agreement to that precise effect between the parties.[2] As heretofore indicated, the decree was prefaced by the statement that an agreement had been "entered into and on the record and in open court"; the record before us discloses, with clarity, that the wife's counsel not only fully understood the terms of the agreement, but it was primarily he who read them into the record. We find no discrepancy between that agreement, as read into the rec-

---

2. Cases cited by the appellant which support the rule that the court cannot order a division of real or personal property or of the proceeds of the sale of real estate owned by the parties as tenants by the entireties are inapposite, for in each case there was no independent agreement to support the order. See *Golas v. Golas,* 247 Md. 621; *Bailey v. Bailey,* 218 Md. 527; *Brucker v. Benson,* 209 Md. 247; *Hull v. Hull,* 201 Md. 225.

ord in open court, and the provisions of the court's decree incorporating the property settlement agreement.

We are unable to conclude, as claimed by the wife, that the agreement was inequitable and not based upon adequate consideration. In jurisdictions where the husband and wife have equal contract and property rights, separation agreements *not disclosing on their face any injustice and inequity* are presumptively valid and the burden to prove that their execution was caused by coercion, fraud or mistake is upon the party making the allegation. *Cronin v. Hebditch,* 195 Md. 607, 618, citing *Owings v. Currier,* 186 Md. 590. Unlike *Cronin,* the agreement before us does not show on its face that it is without consideration, unjust or inequitable. The wife, against whom allegations of adultery were sufficiently proved and corroborated, and who would thereby not be entitled to any alimony, agreed to accept $100.00 per week during the joint lives of the parties, plus an additional two-year period after the husband's death. As the husband was fifty-eight years old at the time of the agreement, it was not unlikely that the wife would receive such payments over an extended period of time. Assuming that the wife's interest in the two properties was between $40,000 and $50,000, as claimed by her, we are unable to conclude that the agreement, taken as a whole, was unjust or inequitable. That the wife may have fared better had she not accepted the $100.00 weekly payment, and kept her interest in the properties, does not, without more, invalidate the agreement on the grounds of fairness. *Brooks v. Brooks,* 184 Md. 419.

Nor do we find merit in appellant's argument that the agreement incorporated into the decree was not what had actually been agreed upon between the parties. The action of an attorney in the course of litigation in which he is employed is binding on his client. *Chertkof v. Weiskittel,* 251 Md. 544; *Burke v. Burke,* 204 Md. 637; *Brooks v. Brooks, supra.* In the present case, counsel for the wife stated for the record in no uncertain terms that appellant and appellee had entered into an agreement pursuant to

which the wife would turn over to the husband "all the proceeds of the sale of the Gibson Island property," and that the court was correct in noting that the wife had also agreed to "execute whatever deeds or other papers are needed to convey all of her right, title and interest in the property in Fort Lauderdale to Mr. Jackson." In light of this statement, the lower court obviously did not abuse its discretion in refusing to modify the decree to reflect what the wife now claims was a mistake, *viz.,* what the wife's counsel said or meant to say was that "all *of his share* of the proceeds of the Gibson Island property," was to be turned over to the husband. Neither can we accept the wife's claim that the parties intended that their agreement, as read into the record, would be subject to her later approval. The record clearly indicates to the contrary. The court noted that the provisions of the agreement pertaining to the property, as incorporated in the decree, coincided with its personal recollection of the agreement, the court's handwritten notes with respect thereto, as well as those of the husband's counsel, and the court clerk's recollection thereof, all of which corresponded with the record transcript. In view of such facts, the wife may not now claim the agreement was not what she had intended. To hold otherwise would be to bring uncertainty into litigation and afford relief based on wholly subjective rather than objective data. See *Chertkof v. Weiskittel, supra,* at p. 553; *Ray v. Eurice,* 201 Md. 115, 127; *Brooks v. Brooks, supra,* at p. 428.

We hold that the agreement as incorporated into the decree was not invalid as violative of the Statute of Frauds because not signed by the party to be charged. In *Pollin v. Perkins,* 223 Md. 532, it was held that recorded testimony may of itself be sufficient to satisfy the requirements of the Statute of Frauds. The decisions of the Court of Appeals have long recognized that testimony recorded in open court will, under appropriate circumstances, remove the case from the ambit of the statute. See *Friedman v. Clark,* 252 Md. 26, 32, and cases cited

therein. As stated in *Trossbach v. Trossbach*, 185 Md. 47, 56, "admissions of a party in the form of testimony would constitute sufficient 'memoranda' under Section 4 or Section 17 [of the Statute of Frauds] or 'writings' under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions."

Finally, appellant contends that the court below erred in delaying the hearing for alimony pendente lite and thereafter, following the award of alimony pendente lite, in refusing to direct payments of the amounts due until the wife turned over the proceeds of the Gibson Island property to the husband. We find no abuse of discretion in either instance. As late as October 8, 1970, appellant herself sought a postponement of the husband's request for an immediate hearing on the merits and requested a postponement of the hearing on alimony pendente lite until October 30, 1970 to afford her time to investigate the financial affairs of the husband. The court's order awarding alimony pendente lite, and expense reimbursement payments retroactive to September 15, 1970, was passed November 4, 1970. We see no resulting prejudice to the wife upon which relief could be afforded on appeal. That the court directed that the husband not make further payments on his alimony pendente lite indebtedness to the wife until she complied with the court's decree of December 24, 1970 requiring her to transfer the Gibson Island property sale proceeds to the husband was not, in the circumstances of this case, an abuse of discretion.

*Decree affirmed; costs to be paid by the appellee.*